No. 9947.

WIDOW J. L. TISSOT ET AL. VS. GREAT SOUTHERN TELEGRAPH AND TELEPHONE COMPANY.

There is no authority in any one to treat as a nuisance that which is not so, and whoever assumes to abate, as a nuisance, that which is not so, acts at his risks and perils.

A company which undertakes, under a contract with a municipal corporation, to do a work of public improvement, such as laying a fire alarm telegraph, has no right to invade the premises of an abutting proprietor and cut off limbs of trees overhanging the sidewalk, and which do not obstruct the use of the sidewalk, or when the posts and wires could have been, with less or no inconvenience, located elsewhere.

Even then, it has not the right to cut off branches so as to leave in the foliage an open space ranging in circumference from 25 to 40 feet, for the purpose of passing an almost imperceptible wire.

The city with whom the contract was made did not grant to the company the right of committing the acts complained. While the rights of corporations will be recognized, the obligations under which they are to respect those of others must be enforced.

The damage done can not be said to be irreparable. Time will surely restore the original condition of things.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

---

*Henry P. Dart*, for Plaintiffs and Appellees:

1. Defendant's employes entered plaintiffs' premises (in their absence and without their knowledge or consent), by climbing the boundary fence, and destroyed the outer limbs of two ornamental magnolia trees. This is a trespass, and plaintiffs have their action for it, though no other damage be proved. Sutherland Damages, 3, pp. 364, 385, 869, 469, Cooley on Torts, pp. 63-4.

2. The wanton destruction of shade trees may be an irreparable injury. Delacaux vs. Villere, XI Ann. 39; Sutherland Damages, p 374. See also Wire's, case, 20 Ann. 500.

Tissot et al. vs. Telegraph Company.

In assessing damages, in such cases, the injury to the feeling; the conduct of the trespassers; its wantonness, etc., are to be regarded. Byrne vs. Gardner, 33 Ann, 9; Cooley; Sutherland; above cited. Wanton trespass implies malice. *Ib.*

3. Negligence of the employes of a corporation acting within the scope of their employment, and in the discharge of their ordinary duties, which amounts to trespass, will be imputed as trespass to the corporation. State ex rel. vs. Judge, 33 Ann. 956; Salt Lake City vs. Hollister, 118 U, S. 256; also, 21 How. 202. "It is too late to discuss the question, once much debated, whether a corporation can commit a trespass." Reed vs. Bank, 13 Mass. 443; also, 2 Woods, 494.

4. The rule is, "that the employer or principal shall be responsible in all cases where the injury to the third person might have resulted from the negligence or unskilfulness of the servant whilst in the immediate pursuit of his master's business; although in fact it did not, but was occasioned by the wilfulness or maliciousness of the servant whilst so employed." American Law Register, Oct. 1887, p. 609, *et seq.*, and authorities there cited; Heath vs. Wilson, 9 C. and P. 607.

## *Bayne, Denègre & Bayne,* for Defendant and Appellant:

The city of New Orleans employed defendant to construct a fire alarm telegraph through its streets, over a designated route, under the supervision of its commissioner of police and public buildings, and in executing this contract. the limbs of two trees which projected over and into the street were cut and the foliage trimmed for the passage of the wires, and for this plaintiffs claim damages. The streets are for public use, and under the administration of the city government. C. C. 454-458; 14 Ann. 842 827; 12 Ann. 747. City Charter, Acts of 1882, Nov. 20, Sec. 7 and 8, p. 20 and 21.

Branches of trees extending into the street may be cut or trimmed, when they prevent or impair a public use, and the fire alarm telegraph is constructed by the city for public use. C. C. 691; Herbert vs. Benson, 2 Ann. Rep. 271; 12 Ann. Rep. 343-746; Young vs. Inhabitants of Yarmouth, 9 Gray 386; Dillon on Municipal Corporations. Sec. 688; Irwin Telephone Company, 37 Ann. Rep. 67; Hill vs. Illinois Central R. R. Co., 38 Ann. Rep. 606; Wood on Nuisances, Secs. 111-256.

The line of the telegraph was constructed under the authority of the city in the exercise of power specially given by its charter and its police power, and in the construction no more of the limbs were cut or trimmed than was necessary, and the presumption of the law is that it was properly done. 28 Ann. Rep. 131; 9 Gray 386; Franz et als. vs. S. C. & P. R. R. Co., and city of Sioux City, 7 Northwestern Rep. 472.

Neither malice nor negligence is in any manner imputable to any of the general officers of the corporation. There is no basis for the claim made for punitory damages, and there is no proof of any actual damage.

The general rule, under the law of Louisiana, is that only actual and compensatory damages are recoverable for an alleged illegal act, and any exception to this rule involves malice. C. C. 2320; Richoux vs. Mayer Bro., Manning's Unreported Cases, p. 50; Boulard vs. Calhoun, 13 Ann. 447; Keene vs. Lizardi, 8 La. Rep. 33; Woodenware Co. vs. United States, 106 U. S. 435; The State vs. Chapman, 38 Ann. 348.

If there is any malice shown or outrage committed by the employee in which the employer did not participate, and which he did not authorize, the employer is not responsible therefor, and this is especially true as to a corporation. 11 Ann. Rep. 294; 13 Ann. Rep. 447; 6 Ann. Rep. 495; 29 Ann. Rep. 792; 38 Ann. Rep. 606, 348; 34 California, 594; 19 Michigan, 3; 47 New York, 122; 4 Indiana, 260; 52 Illinois, 256; 106 U. S. 435; Greenleaf Ev., sec. 253, vol. 2; 4 Exchequer Rep. 580-586; McManus vs. Crickett, 1 East. 106; Wright vs. Wilcox, 19 Wendell, 345. The two last are leading cases on this subject.

The public are entitled to the use of the whole traveled street as a public highway, and the location of the poles for the fire alarm eight or nine feet from the bank of the bayou,

out into the public road, would obstruct and endanger the lives of persons driving or
riding upon it.   The location was made under the direction of the city officers in accord-
ance with the city ordinance, and there is no legal claim for damages.   Wood on Nui-
sances, sec. 256;   Dickey vs. Maine Tel. Co , 46 Maine Rep. 483;   37 Wisconsin, 84;   61
New York, 448.

There is no proof of any actual damage, and neither the law nor the facts proved in this
case authorize any judgment for vindictive or punitory damages.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This is an action to recover $2500 damages for
trespass on plaintiffs' premises, injury done to valuable trees thereon,
etc., by employees of the defendant company, whose action is char-
acterized as wanton, malicious and violative of the rights of peti-
tioners.

After issue joined by a general denial, the case was tried and a judg-
ment rendered for $750 damages, from which the defendant company
appeals.

The facts do not appear to be disputed : with the district judge, we
find them to be the following :

The plaintiffs are the owners of the property, which cost $12,000
years ago, and has been continually since improved.

At a distance of between one and two feet within the front line rail-
ing, there were four full-grown magnolia trees, planted more than
twenty years ago, which had been carefully nurtured and trimmed, and
which presented an imposing appearance.   They were planted two on
each side of the entrance gate, at a distance of between twelve and
fifteen feet apart.

During the summer of 1886, employees of the defendant company
entered the premises and climbing the trees to some twenty-five feet
from the ground, actually did cut off from two of them a number of
limbs projecting on the street, so as to leave an open space in the
foliage varying from 25 to 40 feet in circumference.

In justification the company urges that permission for the cutting of
the limbs had been previously obtained ; that the branches projected
over and into the street and were an obstruction operating as a
nuisance, which the city of New Orleans had the right to remove; that
the cutting complained of was done in execution of a contract between
the company and the corporation for the latter's benefit, or public im-
provement, namely : the construction of a fire alarm telegraph through
its streets, over a designated route, under the supervision of the com-
missioner of police and public buildings; that the trees in question
were on that route and the limbs cut off were an impediment to the

execution of the contract; that no more limbs were cut than was necessary, and the legal presumption is that it was done properly.

The company repels the charges of malice and negligence, holding that, in the absence of such, only actual and compensatory damages can be claimed; that there is no proof of real damage, and that punitory damages cannot be allowed.

Hence, error is charged in the judgment below, and its reversal is asked.

The evidence shows that when the acts complained of were consummated, the plaintiffs were away from the State, and that there lived on the premises a female servant who had a daughter some twelve years old. A gardener occasionally would come merely to keep the garden in good condition.

There is nothing to show that any authority was obtained from either of the occupants; but even if there was *proof* to that effect, it could not be considered, for the plain reason that the keepers of the property had been placed upon it for its protection and not for its destruction, to any extent, and that any permission from them to the contrary was bound to be violative of their trust, and so of no value and protection.

Granting the contract for the building of the fire alarm telegraph, with the city, it by no means follows that under that contract, which is absolutely reticent on the subject, the defendant company acquired from the city the right to do that which is charged against it.

There is no doubt that the streets and sidewalks of a city are not subject to any proprietary right or interest on the part of abutting proprietors. 37 Ann. 67; 38 Ann. 606.

They are things which belong in common to the inhabitants of cities and to the use of which all the inhabitants of the place, and even strangers, are in common entitled. R. C. C. 455, 458; 32 Ann. 915.

Neither can the right of the city to regulate the use of streets and sidewalks be disputed, for it has that privilege not only as an inherent power to its corporate existence, but also because its charter specially vests it with the prerogative. 32 Ann. 915, charter 1882, secs. 7 and 8, p. 20 and 21.

It is well settled that, whether the municipal corporation holds the fee of the street or not, the true doctrine is that it can do all acts appropriate or incidental to a beneficial use by the public, only where it acts in a proper and careful manner, for it is then only that the adjoining proprietor cannot complain.

It is perfectly true that a municipal corporation may, when authorized, expropriate for the purpose of opening streets and making sidewalks, and that it may cut down trees, dig up the earth, and may make culverts, drains and sewers upon or under the surface, grade and level ; in fine, do any proper act which may improve the use of the thoroughfare and enhance public convenience; but that cutting of trees, digging up of earth and the other acts must be confined within the limits of the street which extends over the space between the front lines of property-holders, on both sides, sidewalks included.  It follows, therefore, the city could not enter the premises of the abutting proprietors, cut down their trees or dig up the earth on their premises.  Dillon on Municipal Corp., 3d Ed. § 688 (544), p. 684.

It is true that under its charter, already cited, the city is expressly vested with the power *" to suppress all nuisances;"* but this must be construed so as to apply to cases of *nuisances clearly so,* to the detriment of public health and public convenience; for otherwise the removal or abatement would be unlawful.

Woods, in his treatise on the subject of *nuisances,* substantially uses the following language :.  (Sec. 740.)

Where the Legislature confers upon the city the power to remove nuisances, this power confers authority, provided the thing be a nuisance and produces such an injury that an individual injured thereby might remove, but not otherwise, and if the authorities abate a nuisance, they are subject to the same perils and liabilities as an individual, if the nuisance is not *in fact* a nuisance.    *    *    *    It would indeed be a dangerous power to repose in municipal corporations to permit them to declare, by ordinance or otherwise, anything a nuisance which the caprice or interests of those having control of its government might see fit to outlaw, without being responsible for all the consequences; and even if such power is expressly given, it is utterly inoperative and void, *unless* the thing is *in fact* a nuisance, or was created or erected after the passage of the ordinance, and in defiance of it.

The fact that a particular use of property is declared a nuisance by an ordinance of the city does not make that use a nuisance, unless it is *in fact* so and comes within the idea of a nuisance.  Hence authority conferred by an ordinance of the city is no protection against liability, unless its unlawful character is clearly established.   Therefore (except in cases of great public emergency, when the emergency may be safely regarded as so strong as to justify extraordinary measures upon the ground of paramount necessity, or when the use of property com-

plained of is so clearly a nuisance as to leave no room for doubt on the subject,) it is the better course to secure an adjudication from the courts before proceeding to abate it.

The author next proceeds, enumerating the recognized cases in which municipal corporations may abate nuisances.

In the present instance there is nothing to show that the overhanging of limbs of trees, on the sidewalks from within the property, has ever been declared by law or ordinance, or even considered as a *nuisance*.

In a case in which it was claimed that a verandah extending over a sidewalk was a nuisance, as being an obstruction of light and view, which ought to be abated, a previous court said that, as to verandahs of the kind erected by the defendant, which the evidence shows to have become so common of late years, they are obviously, so far as the public is concerned, a great improvement as compared with the hanging galleries and wooden sheds which extend only to the half or the third of the width of a sidewalk and from which the drip in rainy weather is so great an annoyance to foot passengers. These modern verandahs, on the contrary, afford a perfect shelter from the sun and weather to passers by the front of the houses to which they are attached. In sultry climates, the necessity of shade from the sun, to health and comfort, has universally introduced the custom of balconies, or verandahs, which, in this respect, are equally beneficial to the inmates of the houses and to way-farers. Durant. vs. Riddell, 12 Ann. 747.

It is to be noted that the property in the instant case is situate in the suburban or rural part of the city, in front of a water-course known as a "*bayou*," and that right next to the trees, on the street side, there exists a small sidewalk of between two or three feet in width.

To those who live in this climate, particularly during the hot summer months, when the thermometer points to about 100, when not more, it would be needless to argue that the overhanging of branches of magnolia trees on such sidewalks is no nuisance, but on the contrary, actually proves of great relief not only against the heat, but also sometimes even against the rain itself.

The court can take judicial notice of the fact that, on many sidewalks in the city and its suburbs or outskirts, there has been planted a number of trees, and it knows that this is done with the formal sanction of the municipal authorities, though subject to its good pleasure only. Jewell's Dig. 519.

The principles announced by Wood were expressly recognized in this State, in Kennedy vs. Phelps, 10 Ann. 227, and were enforced in the case of Pontchartrain R. R. Co. vs. New Orleans, 27 Ann. 162, in which the city was condemned to pay $30,000 damages for having pulled down the *depot* of the company, which had been considered a nuisance and which was not in fact such.

The same views were entertained in the case of City vs. Wire, 20 Ann. 500, in which a contractor in laying the pavement on a banquette on one of the streets, took up or destroyed common shade trees which had been planted there, was held liable in damages and condemned accordingly, although he claimed not to have acted with malice.

The defendants have called our attention to what was said in the case of the Earl of Lonsdale, 2 B. and C. 311, by Mr. Justice Bert, and which is to the effect that the permitting the branches of trees to extend so far beyond the soil of the owner of the trees is an unequivocal act of negligence which the injured party may abate without notice; but the learned justice adds, that the security of lives and property may sometimes require so speedy a remedy as not to allow time to call on the person on whose property has arisen to remedy it and that, in all other cases, persons should not take the law into their own hands, but follow the advice of Lord Hale and appeal to a court of justice.

It may well be that, under the circumstances from which the litigation arose, the learned justice thought himself authorized to announce what he deemed to be a principle; but, from his own language, this course could be justified only where security to life and property would require a speedy remedy.

In France, whose system derives from the Roman law, from which we have borrowed the great bulk of our legislation, the code provides, with more regard to the rights of ownership, that he, on whose property the branches of the trees of the neighbor overhang, may compel *the latter* to cut those branches. C. N. 672.

It further declares, however, that if it be the roots that have encroached, he has the right to cut them *himself*. Same article, new line.

Our code, art. 691, on the subject, is to the effect that, if the neighbor suffers any damage from the trees he can oblige the owner to have them torn up, or have their branches cut off, which extend over his estate. It makes the same provision as the French code when the roots invade his estate.

Had, by some accident, the limbs of the trees on plaintiffs' property been detached therefrom and fallen across the sidewalk, remaining there, so as to prevent the use of it by wayfarers, there is no doubt that

the city, or any person injured, could have had the right—the obstruction proving a nuisance, the necessary remedy having to be applied at once—to remove it some way or other, without any notice to the proprietor of the trees, even had it been necessary to enter upon the premises, as an indispensable means to accomplish the removal, but doing no more damage than would be essential to effect the object, remaining liable for any wanton and uncalled for injury. The existence of the emergency alone would justify the interference. U. S. Dig. Vol. IX, vs. Nuisance, p. 649, Nos. 62, 63, 67 and 68; Cooley on Torts, 47.

It is upon this principle that, while recognizing the rights of the defendant to put up poles and run wires thereon this court has, in the Irwin case, 37 Ann. 67, relieved the defendant, because the right had been exercised with as little inconvenience as possible to the plaintiff and to the public.

The argument is fallacious and a begging of the question, that in this case, although the limbs were not strictly a nuisance, they were obstacles in the way of a public necessary improvement, which had to be instantly removed, for it is not found that it was actually *impossible* to put up the posts and run the wires at any other place or otherwise than through the space occupied by the branches and the foliage.

It is apparent from an inspection of the map or plat in evidence that it would have been easy to have planted the telegraph posts and run the wires on them, on the other side of the street, on the embankment of the bayou, without interfering with the tow path used for cordelling schooners and other craft up and down the water course.

It is likewise manifest that, even if the posts could not have been erected elsewhere, there existed no reason whatever to cut the limbs of the trees so as to leave in the foliage an open space ranging from 25 to 40 feet in circumference, or 8 to 13 feet in diameter, for the mere purpose of running through that space an almost imperceptible wire.

It remains to be known how long it will take for other limbs and other foliage to grow which will fill up the large opening thus unnecessarily made.

In the meantime the injury done has surely not been fully repaired.

While treating of the right which a party may have of removing, *himself, and without notice*, a nuisance really so, Cooley on his work on Torts, says: The fact that he is taking the law into his own hands imposes upon himself a special obligation to keep clearly within the necessity which justifies it, and if he is guilty of *wanton* or unnecessary violence, he is liable for the excess.

From the premises, it clearly follows that, as the overhanging of the limbs cut by the employees of the defendant company was not a nuisance, and surely not such as required or authorized an immediate removal by the city, the company or any other person, the entry on the premises and the cutting were wanton acts which constitute a trespass and an infliction of injury to property and feelings which demands the allowance of compensation to the injured party.

That party in default is surely not the city, for it never expressly or impliedly, directly or indirectly, authorized any one of its officials, or even the defendant company, to commit the trespass or inflict the damage. So that the responsibility rests upon the defendant company alone, whose employees represented it and did the acts complained of in the performance of service assigned to them in the ordinary cause of their employment, and which acts the company could have prevented by giving proper instructions or pursuing some different course.

While the rights of corporations will be recognized, the obligations under which they are placed, to respect those of others, must be enforced.

It is hardly necessary to refer to authorities to show that the acts done constitute a trespass and entitle the plaintiffs to an indemnity. Attention, however, is called to Sutherland on Damages, vol. 3, p. 364, 374, 385, 398, 469; Cooley on Torts, p. 63, 64, R. C. C. 1934; Delacroix vs. Villeré, XI Ann. 39; City vs. Wire, 20 Ann. 500; Hardy vs. Stevenson, 29 Ann. 172; Keene vs. Lizardi, 8 L. 26; Brulard vs. Calhoun, 13 Ann. 445; Salt Lake City vs. Hollister, 118 U. S. 256, and authorities therein, all referred to in the elaborate opinion of our learned brother of the district court.

It is evident that the plaintiffs have sustained injury in the wanton invasion of their premises, in the unjustified destruction of their property, in the deprivation of material, physical and moral enjoyment, in the endurance of aggrieved feelings and in the apprehension of a possibly irremediable wrong, for all of which they are entitled to compensatory damages.

The law on the subject of assessment of damages in cases of offenses and *quasi* offenses leaves much discretion to the judge or jury. R. C. C. 1928.

The evidence shows the value of the trees, what it would cost to replace them, how long it would take for the newly-planted trees to acquire the size of those mutilated. It establishes that these were ornaments of the property planted by Mr. Tissot.

It does not put a value on the disappointment, mortification and other sufferings of the plaintiffs, as such things cannot be said to be measurable and appreciable in dollars, though, where there has been a mental endurance, some adequate pecuniary compensation must be made.

The Code provides that, in cases of unlawful deprivation of some legitimate gratification, although the same are not appreciated in money, yet damages are due. R. C. C. 1934; 4 Ann. 440; 10 Ann. 33.

We deem that, under the circumstances, the damage done is daily being repaired and that, in the course of time, it will hardly be perceptible, so that the original condition of things will be fully restored.

We do not think, however, in the absence of any fixed rule for the allowance of such damages, that the plaintiffs are entitled to recover the amounts allowed below:

It is, therefore, adjudged and decreed, that the judgment of the lower court be amended so as to allow the plaintiffs four hundred dollars ($400), instead of seven hundred and fifty dollars ($750), and thus amended, it be affirmed, appellees to costs of appeal.