## No. 12,790.

AGRICOLE FUSELIER VS. THE GREAT SOUTHERN TELEPHONE AND TELEGRAPH COMPANY.

A telephone company, through its employees, had been placed in possession of a line of way, and of telephone posts upon the property of another, which it would have had really the legal right to possess under expropriation proceedings properly conducted. It had obtained the same, however, without the consent of the owner or any order of court. A prayer by the owner for the removal of the posts will not be granted when the evidence establishes the fact that the company would be entitled to have the same line re-established as its right of way, and the posts immediately replaced in the same position. The company, however, will be compelled to pay the value of the right of way and damages for the illegal invasion of the owner's right of property.

APPEAL from the Twenty-fourth Judicial District Court for the Parish of St. Mary. *Allen, J.*

*J. Sully Martel* and *D. Caffery & Son* for Plaintiff, Appellee.

*Weeks & Weeks* and *Denègre, Blair & Denègre* for Defendant, Appellant.

Argued and submitted May 4, 1898.
Opinion handed down May 30, 1898.
Rehearing refused June 28, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J.    Plaintiff alleged that he was the owner of a certain sugar plantation in the parish of St. Mary, which he described.

That along the front of said property, on the line of the Southern Pacific Railroad, there were a number of trees valuable for shade and ornamental purposes, and of different varieties, such as oak, ash, hickory and pecan trees; that opposite thereto, the Southern Pacific had recently established, on the line of its railroad, a new station or depot called Adeline, about which is about to be built a town, and that in anticipation of a demand for town lots he had reserved the front of his said property for subdivision—the said trees giving to said front a great value therefor.

That on or about the ——— day of December, 1896, several employees of the defendant company came to petitioner's property, during his absence therefrom, and, without his knowledge, entered thereupon and began to build across the front of same a telephone line consisting of poles and wires running parallel with the track of the Southern Pacific Company; that petitioner discovered the trespass and ordered them to withdraw from his land, which they did; that petitioner then left two men on his property to guard against any further trespass; that on the following day, being Sunday, the said employees finding the said men on guard, enticed them away on some false statement and fraudulent pretense, and during their absence they secretly entered upon the said land and hastily completed the erection of said telephone line, and in doing so they wantonly and maliciously cut down trees along the mile of front owned by petitioner, and mutilated others by cutting off branches and limbs; that the trees cut down and mutilated before petitioner discovered the said trespass, made during the absence of his guards,

numbered at least fifty, so that the appearance of his said front was much damaged; and the value of his property greatly lessened.  He averred that said trespass and destruction and mutilation of trees was a gross, flagrant and malicious violation of his rights, and that the acts complained of constituted a tort originated and executed in malice and fraud.

That he was damaged in the destruction and mutilation of his trees in the sum of fifteen hundred dollars, and in the digging of holes and the erection of  poles thereupon in the sum of five  hundred dollars. That he was  entitled to  exemplary  and  vindictive  damages in the sum of one thousand dollars.

Defendant first excepted that plaintiff's demands were inconsistent in claiming compensation in damages for the alleged taking and occupation of the land, and the erection of telephone poles thereon, and at the same time praying for the removal of the poles.   He prayed that he be ordered to elect.

It then, under reservation, answered by a general denial.

Further answering it averred that no telephone lines belonging to it were on any property of the plaintiff, but that its poles on said front were erected upon the land and right of way belonging to Morgan's Louisiana & Texas Railroad and Steamship Company, and adjacent to plaintiff's land, all as the law permitted.   It averred that if any entry was made on plaintiff's property (which was not admitted) it was not in trespass, but only such lawful and necessary entry upon the boundary as was required to properly handle the material used in constructing said line.   That no trees were cut by it, save valueless shrubs and  branches on the  railroad property overhanging and interfering with the passing of the wires, and of these so much only as was absolutely needful and proper.   It averred that while its line was being constructed plaintiff obliged its emplopees to stop their work, claiming that they were building same upon his land, but afterward authorized and consented to the completion of said line, which defendant's employees then did, with the understanding that whatever claims for compensation plaintiff might have should be considered, and, if valid, amicably adjusted at a later date.

That under said understanding considerable expense was incurred by defendant in completing said line, and it pleaded that even if it should be found that said line was on plaintiff's land (which it was not) plaintiff was estopped by said conduct and con-

sent (which had been acted on) as set forth from bringing the suit.

It averred that plaintiff's land was wild and partly timbered. That there were no shade or other trees of any value along the locality of the telephone line, and it averred that it had never been put in default.

Defendant subsequently applied for and obtained an order for the survey of the plaintiff's property, and that of the railroad company, alleging that it was necessary that the boundary between said properties be ascertained in order to determine upon whose lands the poles were situated. A survey was accordingly made and returned.

The District Court rendered judgment in favor of the plaintiff for the sum of five hundred dollars, with legal interest from 3d April, 1897, until paid. The judgment was silent as to the demand for the removal of the poles.

Defendant appealed.

In the Supreme Court plaintiff moved that the judgment be amended by increasing the amount thereof to twenty-five hundred dollars, and by ordering the removal of the poles.

The evidence establishes conclusively the fact that the telephone poles erected on the land by the defendant were placed there without the prior consent of the plaintiff. Defendant does not deny this, but attempts to explain it by saying that its employees had done so under the erroneous impression that such consent had been obtained. It would appear that a Mr. Millard, acting on behalf of the defendant, had gone along the proposed telephone line soliciting a right of way from the owners of the land over which it would pass. That when he called at plaintiff's residence, he was temporarily absent, but expected soon to return. That on ascertaining this fact Millard told one Mitchell (who had immediate charge of the work as it progressed) that he would place himself in communication with plaintiff and let him know what to do. That the work progressed faster than had been expected, and Mitchell, not hearing from Millard, assured that everything had been arranged, under that impression went upon the land, dug the holes for the poles, and placed the latter in position, before information was received by him that plaintiff objected to the work. On receiving this information, he notified Millard, and the two called upon the plaintiff in regard to the matter. Millard and Mitchell's version of what took place at the interview between the parties differs from that given by Mr. Fuselier. The

former both testify that the poles having been erected at that time, and nothing remaining to be done to finish the work but to string the wires upon them, Mr. Fuselier consented, at Millard's request, that the work should be completed, leaving open the matter of compensation to be thereafter settled, between Mr. Martel, the counsel of the plaintiff, and Millard and Mitchell. Plaintiff testifies that he gave no such consent, but simply referred the parties to his attorney.

Millard and Mitchell admit that, anticipating the possible change of mind on the part of the plaintiff which actually took place, they, in view of that fact, hurried forward the work upon the next day. Mitchell declares, however, that when on that day he was notified that plaintiff wished him to desist, everything had been finished except the stringing of wires upon two panels. He testified that, upon receiving this notification, he instructed his workmen to pull up the slack of the wires already upon the poles, and tie the end, and immediately started for plaintiff's residence with the messenger who had given the notification. That the workmen, not understanding the import of the order given to them, proceeded to close up the unfinished gap covering only a few hundred feet and closed the whole line. That this was done without any knowledge or suspicion on his part that it would be done. While the testimony of the plaintiff is directly opposed to that of Millard and Mitchell, in respect to the former's having consented to the completion of the work by the hanging of the wires upon the poles, we think that we must, under the evidence, assume that the conversation between the parties was of such a character as, at least, to have impressed Mitchell and Millard with the belief that such consent had been given. The action of Mitchell, in ordering the hanging of the wires on the poles the following day, must be viewed from that standpoint, up, at all events, to the moment when notice was given to him to stop work. The digging of the holes and the erection of the poles upon the land were accomplished facts before the parties met at plaintiff's residence. At what precise time plaintiff came to a knowledge of what was going on is not shown. He testifies to having seen workmen of the company when digging holes upon the land. It is not shown that on ascertaining that fact he at once complained to Mitchell, nor is it shown that after such complaint was made that either holes were dug or poles

erected. Plaintiff does not claim that the telephone line, as presently established, is an improper place, or in a place other than that which the defendant could have legally exacted for its line had legal proceedings been resorted to. It is not charged that the trees cut were not upon that line, nor that they were unnecessarily cut down. The line was established as near the right of way of the Morgan Railroad Company as well could be, and the trees had to be removed or trimmed in order to make way for the poles and wires. We think it very obvious from plaintiff's own testimony that his ground of complaint was based more upon an ignoring of and an invasion upon his rights of ownership than upon a pecuniary loss suffered by him in the premises. On cross-examination, being asked in one place the question, "whether the cutting of the trees had damaged him one thousand five hundred dollars," he answered, "that he did not think the trees were worth that much, but it was cutting the trees without his permission;" and on his being asked what each of the trees was worth, said he could not say exactly what each was worth, that the damage of cutting the trees was what he was complaining about. They were an ornament to his place.

The following questions and answers followed:

"Q. Then really it is not so much the damage that you complain of as it is the getting on your place?

"A. Yes, sir; the damage to my property.

"Q. How much do you estimate the actual loss to your property?

"A. Well, about five hundred dollars damages for the trespass.

"Q. But I mean, what is the actual lessening of the value of your property?

"A. Well, I could not say.

"Q. You could not say?

"A. No, sir.

"Q. Then what do you mean by the five hundred dollars damages?

"A. They had a gang of white men with negroes digging holes all over the place, going over my cane field and corn field and all over.

"Q. You have just stated that you were not cultivating that land; how could they have injured any crops?

"A. Half of the front of the place is field and half timber."

We find nothing going to establish the fact that holes were dug upon the place other than those upon the line of way for the reception of the poles, nor to show that defendant's workmen went all

over plaintiff's place. The reverse is shown. No crop of plaintiff was interfered with. The evidence shows that most of the trees which were cut down were along a trench which the railroad company had dug in making its road, and also very near a fence with with which it had enclosed its right of way. If plaintiff should hereafter sell lots or tracts facing the railroad property, as he asserts it to be his intention to do, the trees, were they still standing, would not serve as ornaments to the same, as they would not be inside of any of the enclosures of the properties, but upon the outer edge of the road, which would have to be left between the fences of the properties and the railroad fence. The trees appear to be, most of them, small; many of them with their roots exposed from the cutting of the trench referred to, and none of them calculated to increase the value of land as being ornamental. As matters stand, the plaintiff's property runs up to the railroad right of way; part of the front has timber upon it and part has open field. No " settlement " has as yet sprung up. Whether there will ever be, in fact, such a " settlement " is purely speculative, as is also its future extent, should one be made. We do not think there is much analogy between this case and that of Tissot vs. Telegraph and Telephone Company (39 An. 996).

There the workmen left their line of work to enter the yard of a private residence and unnecessarily cut off branches from ornamental trees therein; here the workmen were upon the exact line which defendant could have legally exacted as its line of way and cut down no trees other than those which defendant would have been authorized to have had destroyed.

While defendant's employees placed it in a position which it was really entitled to occupy, they caused this to be done prematurely, and without the consent of plaintiff or an order of court, in unwarranted disregard and violation of plaintiff's rights of property.

We can not recognize the right of a corporation to enter upon private property and exercise the right of appropriating the same to its own use upon the grossly unauthorized assumption that the owner might thereafter consent to the same. Parties attempting to exercise the right of eminent domain should be made to know that that right to the extent at least of its being utilized in favor of private corporations, is in derogation of common right, and can only be enforced by strictly following out of the requirements of the law.

Assuming as true that plaintiff after ascertaining how near defendant's line was to completion had consented to interpose no obstacle to the stringing of the wires upon the poles already erected on his land, we do not give to this consent the force and effect which defendant claims for it. If given, it might estop him from contesting the proper location of the line and from seeking to have undone that which had reached the point of accomplished facts, but we do not think it would go so far as to constitute a waiver of his right to ask damages for the prior unlawful entry upon his premises. It is fortunate for the defendant that in prosecuting its work it did so (so far as the evidence shows) in a manner not in itself open to special objection. We do not think defendant should be made to remove the poles it had erected for the same reason as that for which courts refuse to set aside an injunction when it is manifest to them that immediately upon the dissolution of the same the plaintiff would be entitled to have a second one issued. Were we to order the poles erected by defendant upon the land removed, it would be entitled to have the same replaced, and in the meantime a business, *quasi*-public in character, would be greatly impeded and interfered with.

We are of the opinion that plaintiff is entitled to recover from defendant an amount sufficient to properly cover the value of the right of way which it has now acquired and damages for the unlawful entry upon plaintiff's property.

We think two hundred and fifty dollars not too high an estimate for that purpose.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by reducing the amount for which judgment is given in favor of plaintiff against defendant, from five hundred dollars to two hundred and fifty dollars, and that as so amended said judgment is affirmed. Costs of appeal to be borne by the appellee.