BOUTALL, Judge.
The owners of a certain tract of real estate brought suit against Louisiana Power and Light Company alleging that defendant constructed a power line across the front of their property without permission. The suit seeks damage for trespass, reimbursement for physical damages to the real estate, and also seeks removal of the power line. The trial court awarded plaintiffs $2,000.00 damages, but refused to order the removal of the power line. From this judgment the defendant power company has appealed, and plaintiffs have answered the appeal seeking an increase in damages and the removal of the power line.
The undisputed facts show that plaintiffs are the owners of a tract of ground fronting 900 feet on U.S. Highway 90 in St. Charles Parish near Boutte, Louisiana. Beginning in November, 1966, the defendant’s agents contacted the plaintiffs seeking permission to relocate an existing power line along the front of plaintiffs’ property with the utility poles to be located one foot inside the property line. Defendant’s purpose was to replace an existing power line which ran within the highway right-of-way with a line capable of carrying more power, and to relocate this line back out of the right-of-way for 2 reasons: one, to avoid possible conflict with relocation of the highway itself, and two, because the present line was located in a ditch or borrow pit containing water. The plaintiffs refused to permit the construction inside of the property line, but did agree to permit the construction with the poles located one foot outside their property line in the highway right-of-way. In the erection of this line, the defendant utilized the front portion of plaintiffs’ property, creating a clearing or roadway for access to the site leaving a rutted dirt road and a certain amount of debris upon plaintiffs’ property. There was also damage to a fence in this area. The parties disagree on some of the terms of the agreement and the extent of the damages.
*787 We shall consider first the agreement between the parties.
The evidence presented clearly shows that the land owners gave permission for the erection of the poles one foot outside of the property line, and that they understood that there would be an overhang by the crossarms on the utility poles over their property. Plaintiffs admitted that permission was granted to trim the trees within the boundary fence which interfered with the new power line.
The trial court found this to be the extent of the agreement, but defendant contends the agreement extended to complete use of the land for construction purposes. However, the testimony of the plaintiff Harrison, who handled the negotiations, asserts that there was no agreement that the defendant could enter upon the property for the purpose of construction and Lynch, defendant’s right-of-way agent, testifies only that there was an agreement for the placement of the poles and the trimming of the trees.
We agree with the trial judge’s findings and proceed to the issue of damages.
Despite the limited agreement the evidence shows that during the month of March, 1967, the defendant caused its contractor to enter upon the premises, and in order to construct its power line, the contractor cleared an area along the front of the property and used it as an access road and base for the construction. This area was left with very deep ruts located therein and it was necessary for plaintiff to refill and regrade this area to make it level. Additionally, the evidence shows that there were several piles of brush and logs left upon the property which were required to be cleaned up. There was also some damage to an existing fence, although the actual amount of damages and the value thereof cannot be placed with any degree of certainty.[1]
These damages were caused by the construction work beyond the scope of the agreement and by unauthorized entry upon the land. Plaintiffs seek the amount necessary to repair the damages and for trespass. The trial judge awarded the amount of $2,000.00 for these trespass damages and an examination of the record causes us to conclude that his assessment of the damages was substantially correct and cannot be fixed precisely. We do not propose to change them herein. LSA-Civil Code Art. 1934(3).
The main problem in this case, as we view it, is the location and removal of the utility poles. As remarked above, the agreement was to install the poles one foot from the property line of plaintiffs and within the highway right-of-way. Plaintiffs have produced a surveyor who testified that he determined the location of the poles to be as follows:
Pole #1—entire diameter of 13 inches located within property of plaintiff;
Pole #2—edge of pole to the extent of 1 % inches located inside property line ;
Pole #3—edge of pole to the extent of 4 inches located within the property line;
Pole #4—A distance of 5 inches outside of property line to near edge of pole.
As opposed to this, defendant has produced a surveyor whose measurements show the following locations:
Pole #1—the edge of the pole to the extent of 3T/ioo of a foot located inside of the property line;
Pole #2—a distance of 3§ioo of a foot outside of the property line to near edge of pole;
Pole #3—a distance of 32/ioo of a foot outside of the property line to near edge of pole;
*788 Pole #4 — a distance of 89ioo of a foot outside of the property line to near edge of pole.
The trial court concluded that the locations advanced by defendant’s surveyor are the correct locations of these poles. The difference between these two surveys is apparently caused by the starting point or base of measurement. The defendant’s surveyor testified that he used the corner pipe of this property as determined by previous surveys, and from that pipe found the center line of the highway as noted by highway engineers who were doing work in the vicinity. As opposed to this, the plaintiffs’ surveyor used concrete monuments, which are square posts of some 3 or 4 feet in height marking the line of the right-of-way in this area. Both concede that there could be some movement of the reference points that they used, but because of testimony that the concrete monuments were leaning, the trial judge concluded apparent-' ly that the defendant’s base of measurements was more precise and found the poles to be in the position as stated by him. We find no error in his conclusion.
Plaintiffs do not seek damages for mis-location of the poles, and thus the issue is whether we should order the removal of the poles as located on defendant’s survey, bearing in mind that there is only an encroachment of one pole upon plaintiffs’ property to the extent of 3%oo of a foot.
The trial judge found that the defendant obtained a utility servitude upon the property because plaintiffs allowed the use and occupancy of their property for a public purpose to continue for nearly a year before instituting legal action. He held that plaintiff was not entitled to cause removal of the power line because of this acquiescence and the following language of the court stated in Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518 (1937), following the doctrine in the case of St. Julien v. Morgan L. & T. R. Co., 35 La.Ann. 924 (1883):
“[3] And the application of the doctrine is not dependent upon the lapse of any specific prescriptive period and even a brief period of occupancy and use of the property by a public utility, with the knowledge, consent, or acquiescence of the landowner, will suffice to effectuate the doctrine in favor of the utility.”
While we do not agree with the finding of acquiescence after the construction, we do agree that the doctrine of the St. Julien case is applicable here on the issue of placement of the poles. As noted above, the construction of the power line was with the agreement and acquiescence of plaintiffs. The power company mistakenly located its poles a distance varying 16 inches to 2 inches away from the agreed upon location. The record does not disclose any acquiescence in the mistaken placement of the poles. In fact the record through the testimony of Mr. Lynch shows that plaintiffs objected to the placement within 3 days of the construction work, although admittedly at that time plaintiffs were under the impression that the encroachment was some 4 feet. Similarly, the record shows that at that time the defendant was under the impression that the poles were correctly located. It was not until subsequent surveys were made that the parties arrived at the positions established on trial.
In any event there was negotiation back and forth with the position of the plaintiffs always being that they wished damages for the improper use of their land plus removal of the poles.
Because of the particular facts in this case, that is, that there was agreement and acquiescence as to the general location of the power line, we believe the principles of St. Julien should apply, and we should not require removal. In this regard we note the refusal of the court to enforce removal in a somewhat similar set of facts in the case of Fuselier v. Great Southern Telephone & Telegraph Co., 50 La.Ann. 799, 24 So. 274 (1898). As there stated:
“ * * * We do not think defendant should be made to remove the poles it had erected, for the same reason as that *789 for which courts refuse to set aside an injunction when it is manifest to them that immediately upon the dissolution of the same the plaintiff would be entitled to have a second one issued. Were we to order the poles erected by defendant upon the land removed, it would be entitled to have the same replaced, and in the meantime a business quasi public in character would be greatly impeded and interfered with. * * *”
The defendant herein possesses expropriation authority. See LSA-R.S. 19:1 et seq.; Louisiana Power & Light Co. v. Mosely, 18 So.2d 210 (La.App. 2nd Cir., 1944).
At this time we point out that the damages awarded by the trial court were based in part upon a trespass which took place without the consent or acquiescence of the plaintiffs, and in part from a breach of the tree-trimming agreement and the resulting damage that was done to the property. There was no inclusion of any measure of damages for the mislocation of the power line. We would distinguish the trespass, and the leaving of debris, ruts and unevenness of land, occasioned by that trespass, and breach of contract from damages sought for improper placement of the poles. Indeed, plaintiffs have not sought such damages, but merely the removal. Since they were not requested, we do not here pass upon the question of the proper basis upon which to assess such damages.
For the reasons hereinabove expressed, it is ordered that the judgment appealed from is affirmed. All costs shall be borne by the defendant-appellant.
Affirmed.
REDMANN, J., dissenting in part.
REDMANN, Judge
(dissenting in part).
“No one can be deprived of his property unless for some purpose of public utility, and on consideration of an equitable and previous indemnity and in a manner previously prescribed by law. * * * ” C.C. art. 497.
“* * 4c Except as otherwise provided in this constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” La. Const, art. 1 § 2.
The most objectionable legal aspect of this case is its allowance of the acquiring of an immovable servitude by occupancy (see C.C. art. 3412), both (1) against the expressed will of the landowner and (2) without any proof of public necessity to justify expropriation. (On both of those factors St. Julien v. Morgan L. & T. R. Co., 1883, 35 La.Ann. 924, and its progeny are distinguishable.)
The most important fact in this case is not disputed. Defendant already had, a few feet from plaintiffs’ land, a line of suitable poles in existence upon which the larger-capacity line could admittedly have been strung. It also already had the right to place its line of poles immediately adjacent to plaintiffs’ land. It wanted a servitude on plaintiffs’ land not because of present public necessity but because of (1) possible future need to relocate if this relatively rural, non-interstate highway roadway were widened (beyond its existing two lanes in each direction separated by a median), and (2) the circumstance that if such relocation became necessary the state would not pay for relocation costs of lines on highway rights-of-way, as a result of which, as the defendant company’s employee testified, defendant has adopted a policy of locating its lines on immediately adjacent private property.
This is simply not a case of public necessity justifying depriving a citizen of his property.
*790 On this basis, even adopting the majority’s facts,[1] I would order removal of the one pole placed upon plaintiffs’ land and also removal of all overhanging crossarms and lines.
Plaintiffs never agreed that, from the pole one foot outside their property, cross-arms and lines could be constructed over their property. Their only agreement was that, since defendant desired to place poles one foot outside plaintiffs’ land (to which plaintiffs could not object), defendant could trim plaintiffs’ trees.
This agreement was required because a utility -company cannot cut branches overhanging a public right-of-way without the owner’s consent; Tissot v. Great Southern T. & T. Co., 39 La.Ann. 996, 3 So. 261 (1887); see also Fontenot v. Central La. Elec. Co., 147 So.2d 773 (La.App.1962). An agreement to allow tree trimming must be construed not to include an agreement that crossarms and lines may overhang plaintiffs’ property; C.C. art. 753. I further point out that the transfer of an immovable must be in writing, C.C. art. 2275, and this requirement also applies to servi-tudes, C.C. art. 743.
Accordingly since defendant does not have a servitude for the overhanging crossarms and lines I would order them removed.
I concur in the amount of trespass damages.

. The defendant produced evidence that a prior hurricane had knocked down and damaged a number of trees in the area, in turn damaging the fence. Plaintiffs eon-ceed some such damage but contend it was of less severity.

. On the facts as I see them, there are three poles on plaintiffs’ land all of which I would order removed. The trial judge should be reversed in his acceptance of the defense surveyor’s opinion. The basic defense position was that through this same surveyor’s error the poles were admittedly misplaced. When this surveyor testified at trial, he explained that even for trial he did not use the official right-of-way monuments because they were leaning. Since photographs show the monument in front of plaintiffs’ land is precisely erect, I believe it was error to accept the defense surveyor rather than plaintiffs’ civil engineer, a disinterested witness who measured the exact a cross-highway distances between monuments to insure they had not moved and in fact used three monuments (plaintiffs’ and the two adjacent) in an exactly straight line as the right-of-way boundary. The logic of this approach is, to me, overwhelmingly more reasonable than defense surveyor’s utilizing the edges of an old asphalt roadway to decide questions of inches of measurement. Thus I would find that three poles themselves encroach and must be removed, with all overhanging crossarms and lines, to outside plaintiffs’ property line as shown T>y the official right-of-way monuments.