**KELLY v. PIPPITONE**

(January 27, 1930. Opinion and Decree.)
(March 10, 1930. Rehearing Refused.)

Henry L. Garland, of New Orleans, attorney for plaintiff, appellant.

Hugh M. Wilkinson and Harry Nowalsky, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Plaintiff, Kelly, and defendant, Mrs. Pippitone, own adjoining houses in this city.

During the year 1921 both the properties in question were owned by Mrs. Annie Kelly, and, as the improvement on each plot occupied too much thereof to permit of an automobile driveway entirely within the limits of either, Mrs. Kelly, in July of that year constructed an automobile driveway consisting of two concrete runways. This driveway, located between the two houses, one concrete strip being on each lot of ground, served two separate garages, one in the rear of each house. On January 9, 1924, Kelly purchased from his mother, Mrs. Annie Kelly, one of the properties, to-wit: No. 3918 Banks street. On December 14, 1922, one E. Leo Faciane bought the other property, to-wit: No. 3916 Banks street, from Mrs. Kelly, and on March 12, 1926, Faciane transferred it to the present defendant, Mrs. Pippitone.

While the properties were owned by John Kelly and Faciane, respectively, they, by agreement, repaved the driveway so that, instead of its consisting of two concrete strips, it now consists of one solid strip wide enough for an automobile to pass.

On December 19, 1922, the said Faciane and the said Kelly signed a joint statement with reference to the driveway, which statement reads as follows:

"I, E. Leo Faciane, do hereby state that under date of December 14, 1922, I purchased the single cottage, known as 3916 Banks Street, from Mrs. Annie Kelly ·(the said Mrs. Kelly being owner of the adjacent property 3918 Banks Street), and that at the time of my purchase, community driveway between the two said properties was in use.

"By mutual consent, it was agreed that this said community ·driveway would remain in effect for the benefit of myself and Mrs. Kelly's son, J. W. Kelly, also owner of an automobile. This said community driveway and garage was installed prior to the purchase of the cottage, known as 3916 Banks Street, by the writer.

"In support of the above statement, I hereby affix my signature, and request that the said party, J. W. Kelly, joint-user of this community driveway also affix his.

"(Signed)    E. Leo Faciane.
"(Signed)    J. W. Kelly."

On January 18, 1924, the said Kelly and the said Faciane entered into another agreement which reads as follows:

"I, J. W. Kelly, with this statement do certify that under date of January 9, 1924, I purchased from my mother, Mrs. Annie Kelly, the residence at 3918 Banks Street, this said residence being next to a similar residence owned by E. Leo Faciane, and both parties enjoying the benefit of a community driveway, and being aware of previous agreement existing between Mrs. Kelly and Mr. Faciane, we, the present owners, E. Leo Faciane of 3916 Banks Street and J. W. Kelly of 3918 Banks Street, do mutually agree to continue the agreement regarding the community driveway, and it is further mutually understood that in the event that either property is disposed of, the present owners agree to inform the future purchaser of this joint agreement."

Later, Mrs. Pippitone, for reasons of her own, erected a fence on the line dividing her property from that of her neighbor, and, as that made it impossible for an automobile to use the driveway, this suit resulted.

Plaintiff claims that a servitude of passage has been established and that he is entitled to an injunction restraining defendant from interfering with the exercise of the rights resulting from that servitude.

This claim is based on articles 767 et seq. of the Civil Code. Article 767 reads as follows:

"The destination made by the owner is equivalent to title with respect to continuous apparent servitudes.    ....
"By destination is meant the relation established between two immovables by the owner of both, which would constitute a servitude if the two immovables belonged to 'two different owners."

The servitude claimed results under certain circumstances, from what is termed the "destination du pere de famille." It is at once apparent that, in order to establish such a right, three essential facts must be shown:

First, the right must have been created by the common owner, the "pere de famille";

Second, the right or servitude must be apparent; and

Third, the right or servitude must be continuous.

It is conceded that the servitude claimed was not established by title. Therefore, unless the three essential requirements to which we have referred can be shown to exist, the inescapable result is that article 767 of the Code is not applicable, and if that article does not apply, then the situation is governed by article 766, which, in part, reads as follows:

"Continuous non-apparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title."

The servitude claimed is a right of passage, and under Civil Code, article 727, the right of passage is a discontinuous servitude. That the construction of a road or a tramway does not convert a discontinuous servitude to a continuous one is well established in our jurisprudence.

In Ogborn vs. Lower Terrebonne Refining & Mfg. Co., 129 La. 379, 56 So. 323, the Supreme Court said:

"The writer of this opinion thinks that a servitude, the exercise of which necessitates the permanent maintenance of a railroad, consisting of roadbed, cross-ties, rails, bridges, etc., of which the dominant estate has the exclusive use, and of which the servient estate has only the burden, is a continuous apparent servitude. It is admittedly so at common law, and, in the writer's opinion, must be so under the civil law also, because the basic principles of

prescription are the same in the two systems of law. The majority of the court think differently, however."

In the same case the court, commenting with approval on certain commentators, said:

"Aubry & Rau, commenting on the articles of the Code Napoleon corresponding with the foregoing articles, has the following:

" 'Discontinuous servitudes are those which need the act of man to be exercised. What characterizes them is that their exercise does not survive the act of man; it ceases the moment this act ceases. Such is the servitude of way; it is exercised each time the owner of the dominant estate passes over the servient estate, and only during the time occupied in his passing. The law cites as additional examples servitudes of drawing water, of pasturing cattle.

" 'These servitudes continue to be discontinuous, notwithstanding that in order that they should be exercised certain apparent works have had to be established. The reading together of articles 688 and 689 shows that the Code has employed two distinct divisions, which must not be confounded, "appearance" and "continuity." A servitude of passage which manifests itself by a door or gate, of which the key has been delivered to the owner of the dominant estate, or for which visible works have been constructed—for example, a road across the neighboring estate, a bridge —is none the less discontinuous, according to the classification made by the Code.' Volume 8, p. 118, No. 248, Servitudes.

"From the standard work, Carpentier et Du Saint (volume, Passage, Nos. 56 and 57), we take the following:

" 'The servitude of way may be apparent. It is so if it manifests itself by some exterior work, as a gate, or a macadamized road. But it continues, nevertheless, to be a discontinuous servitude, despite its apparent continuousness, and, inasmuch as the actual action of man is necessary for its exercise, it cannot be established by prescription; citing Cassation, 24 Nov. 1835; Brahauban (Sirey, vol. of 1836); pt. 1, p. 52; Id., Journal du Palais; 9 Md. 1836, Case of Accloque, Sirey, vol. of 1846, pt. 1, p. 307; Sup. Ct. of Nimes, 1st July, 1845, Case of Gordareau, Sirey, vol. of 1846, pt. 2, p. 14; Journal du Palais, vol. of 1846, pt. 1, 267; Sup. Ct. of Grenoble, Feb. 3, 1849, Case of Barbier, Sirey, vol. of 1849, pt. 2, p. 572; Dalloz, vol. of 1849, pt. 2, p. 235; Delvincourt, vol. 1, 412; Duranton, Servitudes, No. 577; Pardessus, Servitudes, vol. 2, No. 276; Solon, No. 314; Demolombe, vol. 12, Nos. 719 and 771; Aubry & Rau (5th Ed.) vol. 3, No. 248, p. 118; Laurent, vol. 8, No. 128; Bandry-Lacantinerie & Chanuveau, Servitudes, No. 1084.'

"It is thus seen that in France a servitude of passage is none the less discontinuous, within the meaning of the above-quoted article of the Code, if exercised by means of a macadamized road. A road of that character is as apparent and continuous as a railroad; and hence the two are not distinguishable in the present connection."

Later, in Bomar vs. City of Baton Rouge, 4 La. App. 232, the Court of Appeal for the First Circuit said:

"The fact that the Perkins Road ran over this lot for a period of fifty, sixty or seventy-five years prior to its incorporation within the corporate limits of the city of Baton Rouge does not make proof of dedication. The proof is that after this lot had been taken into the city limits, the public continued to use it as a street of Baton Rouge. This use by the city was a mere continuation of the use which had been made of it as a public road by the traveling public of the parish of East Baton Rouge. This right of passage so enjoyed by the parish, and thereafter by the city, was a mere discontinuous servitude; C. C. 727; and which could be established only by a title, and could not be acquired by possession; C.C. 766."

See, also, Lawson vs. Waterworks, 111 La. 83, 35 So. 390; City of Shreveport vs. Simon et al., 132 La. 69, 60 So. 795.

It thus appears that the third essential to which we have referred does not exist

here. It is true that the driveway was constructed by the common owner. It is also true that the driveway is apparent, but it is very evident that, under the jurisprudence, its discontinuous use prevents the application of article 767 of the Civil Code and stands as an obstacle to the right of plaintiff.

In Durel, Administrator, vs. Boisblanc, 1 La. Ann. 407, cited by plaintiff, the question of whether a servitude of passage was continuous 'or discontinuous does not seem to have been involved. There the purchaser at a judicial sale refused to take title because of the existence of a servitude of passage. The court held that the alleyway in question was apparent and that the purchaser must have known of it when he bid on the property, and further held that in all probability his bid was not affected one way or another by the servitude. Whether the defendant, Mrs. Pippitone, knew or did not know, when she bought the property, that there was a common driveway, or whether she knew or did not know that the servitude was not established by title, is immaterial, because such a servitude, if it is discontinuous, can be established only by title, and not by estoppel.

That the servitude was not established by title was well known to plaintiff, as is evidenced by the contract he made with Faciane. That Mrs. Pippitone and her husband did not consent to the servitude being inserted in the title is evident by the testimony of Faciane to the effect that, when he sold to Mr. Pippitone, who was then alive, "they wanted to know if the house did have a community drive, and I told them that I bought the place without a community drive, but we had agreed between Mr. Kelly and I to have it. Mr. Pippitone said he did not want it put in the title at the time—wanted to buy it like I bought it."

Broussard vs. Etie, 11 La. 400, is in no sense applicable here. That case is authority merely for the proposition that one whose estate is entirely inclosed by that of another can force that other to give him a right of passage somewhere, but that he is not the owner of a continuous apparent servitude to pass at any particular place until the place is determined by a judgment of court. The court said:

"'Interrupted servitudes, whether apparent or not, can be established only by a title.' Louisiana Code, art. 762.

"The plaintiff has, indeed, shown, that from the situation of his estate he may claim the right of passage on that of the defendant; but he has not shown that he has this right on any determinate part of it. This right he must acquire by obtaining from the defendant, or contradictorily with him from the court, a designation of the place on which it is to be exercised. He has not done this, and he cannot, therefore, complain of the erection of a fence by the defendant, on any part of his estate."

The authorities seem overwhelming to the effect that such a driveway, if creating a servitude of any kind, creates only a discontinuous one, and that to hold a discontinuous servitude over a servient estate, the owner of the dominant estate must have a title.

The judgment appealed from is correct and it is affirmed.