### CENTRAL CAMBALACHE, Inc., v. MARTINEZ.

#### No. 3077.

Circuit Court of Appeals, First Circuit.

Feb. 25, 1936.

Martin Travieso, of San Juan, P. R., for appellant.

Otto Schoenrich, of New York City (Curtis, Mallet-Prevost, Colt & Mosle, of New York City, and Luis Mercader, of Arecibo, P. R., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico of March 8, 1935 in favor of the plaintiff, reversing a judgment of the District Court of Arecibo of December 8, 1931, in favor of the defendant.

May 26, 1930, the plaintiff brought a complaint in the District Court of Arecibo alleging that he was the owner of three tracts of land free from encumbrance or liens and situated in the ward of Sabana Hoyos of Arecibo, the first consisting of 7 acres, the second of 1.56 acres, and the third of 4 acres (describing them); that the defendant was a private corporation, engaged in the manufacture of sugar, and owned a railroad used for the transportation of its canes from cane plantations to the sugar mill; that the track is laid upon the three properties described, extending from the north to the south and occupying a strip of land between 3 and 4 meters wide, severing said properties into two parts and asserting on them a lien or encumbrance of a right of way against the will of the plaintiff; that the defendant continues to pass through said properties, though requested not to do so; and he asked the court to render judgment that the defendant had no servitude of any kind over the lands and that it be ordered to cease passing through said properties and to remove the track therefrom. Upon motion of the plaintiff, before trial, the 7-acre parcel was eliminated from the controversy.

In its answer the defendant denied the ownership or possession of the plaintiff of the two parcels here in question. It also alleged certain other specific defenses as follows: (1) That, as to the 4-acre parcel claimed by the plaintiff, the railroad track of the defendant was constructed by it by virtue of a right of way or servitude granted it by one Gregoria Serrano, former owner of the land; (2) that, as to the part of the railroad alleged in the complaint to be built on the 1.56-acre parcel, the road is built upon a strip of land containing 434.10 square meters, which strip the defendant acquired by virtue of a deed of sale from one Placido Sanz; (3) that it acquired ownership of the lands in question by prescription, having been in possession of the same for more than 20 years; (4) that it acquired a servitude in the lands in question by prescription, having been in possession of the same for more than 20 years; and (5) that the plaintiff, when acquiring the property, had personal knowledge of the existence of the railroad and is estopped from bringing his action.

The District Court gave judgment for the defendant. It found: (1) That the defendant had acquired a right of way over the 4-acre parcel from a former owner, Gregoria Serrano, by a writing of April 1, 1910, paying $130 as compensation; (2) as to the parcel of 1.56 acres, that it had been a part of the land of Gregoria Serrano over which she had given the right of way in April, 1910, and, if it was not then a part of her land, it had belonged to Placido Sanz, from whom the defendant, on October 9, 1912, purchased the strip of land of 434.10 square meters; (3) that the real owner of the two parcels of land in question was the plaintiff's father, Remigio Martinez Badia, from whom the plaintiff purchased the same in 1929 and who was the employee of the defendant in 1910, when the railroad tracks were constructed; and (4) that the plaintiff was estopped from making claim to the portion of the two parcels of land over which the railroad tracks were built by virtue of the decision in the case of Velez et al. v. Guanica Centrale, 26 P.R.R. 724.

On appeal to the Supreme Court of Puerto Rico, that court, on March 8, 1935, reversed the decision of the District Court and gave judgment for the plaintiff. That court found: (1) That the defendant was a private corporation; (2) that the plaintiff was the owner of the 1.56-acre parcel, having purchased it in 1929 from Remigio Martinez Badia, who had bought the same more than 20 years before from Placido Sanz and Jose Dolores Varela; (4) that the plaintiff was the owner of the 4-acre parcel, having purchased it in 1929 from Remigio Martinez Badia, who had bought the same from Epifania Rodriguez in 1920; (5) that the titles to these parcels were recorded in the registry of property, and that the evidence disclosing title in the plaintiff was admitted without objection and that the defendant introduced no evidence in contradiction of it; (6) that there was no evidence to support the finding that Remigio Martinez Badia, the father of the plaintiff, was the real owner of the property, and that the finding was not justified; (7) that the evidence did not support the finding of the District Court that the 1.56-acre parcel included within its bounds the strip of land of 434.10 square meters purchased by the defendant from Placido Sanz in 1912, and found that it did not include it; (8) that the evidence did not show that the 4-acre parcel was included

in the 20-acre tract of Gregoria Serrano, across which the defendant claimed to have obtained a right of way by the instrument of April 1, 1910, but that, assuming it to be included, that fact would not affect the decision of the case for the reasons hereinafter stated; and (9) it found that the two parcels of land in question, owned by the plaintiff, were crossed by the defendant's railroad.

It then assumed, for the purposes of the case, that the 4-acre parcel was included in the 20-acre tract owned by Gregoria Serrano in 1910, when she signed and made oath to the instrument of April 1, 1910, in which she stated she constituted a servitude of right of way over it gratuitously in favor of the defendant for the laying down of a railroad track. In regard to this instrument, the Supreme Court found that it was typewritten, with blank spaces which were filled in in handwriting; that the typewritten part stating that a consideration had been given for the servitude had been crossed out and the word "gratuitously" written in; and that the handwriting was not that of Gregoria Serrano. It then found that the evidence introduced by the defendant to show that it paid $130 as a consideration for the right of way did "not justify the conclusion that such sum was given her as a consideration for the servitude which she had granted gratuitously," and also ruled that the terms of the written instrument could not be contradicted or altered by such testimony (Sarria v. Alvarez, 38 P.R.R. 813; Code Civil Procedure, § 392; Law of Evidence, § 30), and found, as a matter of fact, that the document of Gregoria Serrano of 1910 was "a gratuitous grant of servitude, that is to say, without consideration"; and that said instrument was not recorded in the registry of property and could not be, as it lacked the requisites demanded by the Mortgage Law.

It then held that the document "did not create any right of servitude in favor of the Central Cambalache for lack of consideration" (Civil Code, § 1227); that it was a "mere permit or tolerance which does not affect the possession, according to section 446 of the Civil Code," and that it was "revocable because such consent does not mean that the owner of the property has renounced forever his full ownership. Torres v. Plazuela Sugar Co., 24 P.R.R. 451; Colon v. Plazuela Sugar Co., 31 P. R.R. 299."

It then held that the case of Gaztambide v. Guanica Centrale, 26 P.R.R. 724, had "no application to the present case because in the latter what is involved is a railroad track of a private corporation for its exclusive use, whereas in the former [26 P.R.R. 724, supra] the railroad track involved was for the public use. Torres v. Plazuela, supra." .

After pointing out that the defendant had not introduced any evidence of a servitude on the plaintiff's lands other than the one claimed from Gregoria Serrano in 1910, which did "not constitute a servitude but a mere revocable license," it proceeded to consider whether it had "acquired such right by prescription, because its railroad track * * * [had] been laid on the lands of the plaintiff [both parcels] for more than twenty years." As to this it held that the servitude of a right of way for a railroad track could not be acquired ·by prescription but must be acquired by virtue of title (Civil Code, Ed. 1930, § 475) ; that, although the presence of the defendant's railroad track over the plaintiff's land was open and apparent, it was a discontinuous servitude because it is used at long or short intervals, depending on human acts, and that, under section 475 of the Civil Code (Ed. 1930), section 546 (Ed. 1911), "discontinuous servitudes, either apparent or not apparent, can only be acquired by virtue of a title"—citing Gonzalez v. Plazuela Sugar Co., 42 P.R.R. ——; section 539 of the Civil Code (Ed. 1911) ; section 468 (Ed. 1930) ; Del Moral v. Muratti, 34 P. R.R. 244; Manresa, vol. 4, p. 577; Scaevola, vol. 10, p. 157; and Morell, vol. 1, p. 341.

Having found that the defendant had failed to show that the strip of land of 434.10 square meters, bought by it in 1912, was "enclosed within the 1.56-acre tract and as no valid title of servitude has been shown in regard to the property of Gregoria Serrano, of which the 4-acre tract of the plaintiff is said to be a segregation," it held that "the judgment appealed from must be reversed and another rendered sustaining the complaint and adjudging the defendant to remove within six months, counted from the date of this judgment, the railroad track which it has laid over the two tracts of the plaintiff, without special imposition of costs."

■ This being an action at law to try the title to land or to a right or interest in land, the findings of fact made by the Supreme Court are not here open to review. In reviewing such an action, this court considers only questions of law.

According to the facts found by that court, the plaintiff is the lawful owner of the two parcels of land in question over which the railroad tracks of the defendant pass; the defendant is a private corporation using the railroad tracks to transport sugar cane to its mill; the strip of land of 434.10 square meters conveyed to the defendant by the deed of 1912 is not a part of, or included in, the 1.56-acre parcel, and the defendant has no servitude or right of way thereon by virtue of any deed or contract; the defendant has no servitude or right of way in the 4-acre parcel by deed or contract; that, if it be assumed that the plaintiff's 4-acre parcel was a part of the 20-acre tract, which Gregoria Serrano owned in 1910 when she gave the defendant the instrument of April 1, 1910, that instrument is by its terms and in fact without consideration and not a contract.

■ Having found that the instrument of April 1, 1910, was without consideration, the court ruled that it gave only a revocable license, not a servitude upon the 4-acre parcel. We think this ruling was clearly right.

■ It also ruled, with regard to both parcels of land, that the plaintiff was not estopped to assert his title thereto because he knew, at the time he purchased the two parcels, that the railroad tracks of the defendant crossed the same, as the defendant was a private corporation in the use made of the railroad, and, so far as appeared, there was no consideration paid for a right to maintain the tracks over the plaintiff's land. A like conclusion was reached by the Supreme Court of Puerto Rico in 1916 in the case of Torres v. Plazuela Sugar Co., 24 P.R.R. 451, which was followed in 1922 in the case of Colon v. Plazuela Sugar Co., 31 P.R.R. 299, 307; and in its opinion in the case now before us the court distinguished those cases and the present one from Gaztambide v. Guanica Centrale, 26 P.R.R. 724, on the ground that in that case there was a contract and a consideration for the right to construct and maintain the railroad track and the track was for public use.

It · is generally held, where a public railroad corporation, having the right of eminent domain, enters upon land with the oral or written permission of the landowner and constructs its road without first hav-

ing condemned the land or paid the owner for the right, that, while the owner may recover the amount agreed upon, or, there being no agreement, the amount of damage he suffered, he is estopped to deny the legality of the proceedings pursued in the taking of the land and the construction of the road. In such case the defendant in fact acquires title to the land by the exercise of eminent domain, not by reason of a contract. The contract, if any, operates as a mere waiver of performance of the conditions essential to the exercise of the right of eminent domain, and which it would have been required to perform in the absence of the contract. Uncanoonuck Road Co. v. Orr, 67 N.H. 541, 41 A. 665; Manchester & Keene R. R. v. City of Keene, 62 N.H. 81.

We think that the court did not err in ruling that the plaintiff was not estopped, the defendant being a private corporation and without a contract right, for otherwise a servitude or interest in land would be transferred without a deed in contravention of the provisions of section 547 of the Civil Code (Ed. 1911). That section provides in substance that a title establishing a servitude in land can be acquired only by deed, except in case of a continuous and apparent servitude, which may be acquired either by virtue of a title or by prescription after 20 years. (Section 544, Ed. 1911.)

The remaining question is whether the Supreme Court erred in holding that the presence of the railroad tracks for the passage of trains over the plaintiff's lands was a discontinuous servitude rather than a continuous one and, under the provisions of sections 546 and 547 of the Civil Code (Ed. 1911); sections 475, 476 (Ed. 1930), could only be acquired by virtue of a title. The Supreme Court of Puerto Rico so held, not only in construing the provisions of the Civil Code in this case, but previously in the cases above cited of Gonzalez v. Plazuela Sugar Co. and Del Moral v. Muratti.

The servitude in question, if it existed, was an apparent one, and, if it was continuous within the meaning of the Code, it could be acquired either by virtue of a title or by prescription after 20 years, Civil Code, § 544 (Ed. 1911); but, if it was a discontinuous servitude, whether apparent or non-apparent, it could only be acquired by a title. Civil Code, § 546 (Ed. 1911). Title to servitudes which cannot be acquired by prescription can only be acquired by deed of acknowledgment or by final judgment. Section 547 (Ed. 1911). "Continuous servitudes are those the use of which is or may be uninterrupted, without the intervention of any human act." Civil Code, § 539 (Ed. 1911). "Discontinuous servitudes are those used at long or short intervals, and which depend upon human acts." Civil Code, § 539 (Ed. 1911). "Apparent servitudes are those which are indicated and which are continually in sight by external signs, which reveal the use and benefit of the same." Civil Code, § 539 (Ed. 1911).

According to the provisions of the Code, a right of way is a discontinuous servitude, since it may be used at long or short intervals and its exercise depends upon human acts. Such a servitude does not arise out of, or consist in, the presence of the tracks, but in the right of passage. The tracks merely facilitate the exercise of the servitude, and incidentally render it apparent. And, under the Code, the grant of a servitude carries with it the construction of "all works necessary for the use and preservation of the servitude." Civil Code, §§ 549, 550 (Ed. 1911).

The fact that works or structures essential to the exercise of the contemplated servitude may call for a beaten path, a macadamized road, a concrete highway, a railroad, or an aerial cable does not change its character as a discontinuous servitude. Such a servitude is one used at long or short intervals, and its exercise depends upon human acts. A right of way for a railroad has not only been held to be a discontinuous servitude, by the Supreme Court of Puerto Rico (cases above cited), but in Louisiana (Ogborn v. Lower Terrebonne Refining & Mfg. Co., 129 La. 379, 56 So. 323); in Cuba (judgment of the Supreme Court No. 234 of December 14, 1928, vol. 44, p. 708); in France (judgment of the Court of Cassation of February 24, 1930, reported in Dalloz, Jurisprudence Generale, 1932, Decisions of Court of Cassation, p. 9). The court of Spain, so far as we are informed, does not appear to have passed upon the question as applied to a railroad, but the comments of Spanish commentors do not lead to a contrary conclusion. 4 Manresa, 569, 600; 10 Scaevola, 156, 293; 1 Morell, 341.

In Louisiana, where the works or means for facilitating the right of passage was a concrete driveway, the right of the way

was held discontinuous. Kelly v. Pippitone, 12 La.App. 635, 126 So. 79. And the same was held in France with reference to an aerial cable, and Professor Andre Besson, of the faculty of law of Grenoble, in commenting on that decision holding the aerial cable a discontinuous right of way, said: "It is evident that the servitude of passage, although it here has an apparent character, is a discontinuous servitude. The establishment of the cable and the towers which support it merely constitutes the exterior sign which reveals the existence of the servitude, just as a movable barrier and a macadamized or paved road reveal the existence of a servitude of passage on the surface. After these works of installation are effected, the servitude is not exercised by itself: in order that its utility appear the action of man is necessary. The right of passage, by its very object, implies a certain action of the owner who, personally, or by mechanical means, traverses the servient estate."

And he ends his comment by saying:

"The civil chamber was therefore right in affirming that: 'Notwithstanding the permanent character of the work necessary for its functioning, a servitude of transportation by aerial cable does not present anything which may be considered incompatible with the discontinuous character of a servitude of passage."

And the Supreme Court of Cuba in the above-cited case, in considering the question "whether a railroad established for the passage of trains for over twenty years, on land which does not belong to the owner of the railroad, constitutes a continuous or discontinuous servitude, and * * * can be acquired by prescription," said:

"Whereas every servitude of passage is by its nature discontinuous, since the essential and characteristic feature of this class of servitudes is the passage of the owner or of the persons or things depending on the owner of the dominant estate over the portion of the land of the servient estate on which the servitude is constituted, and its use depends on the action of man; which, in accordance with the provisions of Article 532 of the Civil Code, is sufficient to give said servitude the character of discontinuous as opposed to the servitudes which the same article calls continuous, and the use of which, according to the text of the article, is or may be incessant without the intervention of any act of man; this circumstance, that the use of

the servitude depends on the action of man, being what constitutes the difference between the two kinds of servitudes.

"Whereas the existence of the railroad, located in a permanent manner on the strip of land over which the appellant claims to have acquired the servitude, is not a proof of the continuous use of the same, but only of its apparent character, which circumstance is sufficiently demonstrated by considering that the said road is used only when the locomotive and the cars for whose transit the road was constructed pass over the same."

We think the Supreme Court, in reaching the conclusion that it did in the construction of these provisions of the Code, did not err. Furthermore, its construction of these provisions of the Code involves a question of local law and is not to be disturbed unless clearly wrong. Cardona v. Quinones, 240 U.S. 83, 36 S.Ct. 346, 60 L.Ed. 538; Diaz v. Gonzalez, 261 U.S. 102, 43 S.Ct. 286, 67 L.Ed. 550; Henna v. Sauri & Subira (C.C.A.) 237 F. 145. We fail to see wherein the court was clearly wrong—it seems to us to have been right.

We regard the amount involved in this controversy adequate to authorize us to entertain jurisdiction. U.S.C.A. title 28, § 231 (Feb. 13, 1925, c. 229, § 9).

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.