## MENDEZ v. EASTERN SUGAR ASSOCIATES.

### No. 3173.

Circuit Court of Appeals, First Circuit.
April 8, 1937.

400

Henry G. Molina, of San Juan, P. R. (F. Rodriguez Alverio, of Comerio, P. R., and Arturo Aponte, Jr., of Humacao, P. R., on the brief), for appellants.

Earle T. Fiddler, of San Juan, P. R. (Herbert S. McConnell, of San Juan, P. R., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the Federal District Court of Puerto Rico in a bill in equity brought by the Eastern Sugar Associates (hereinafter referred to as the petitioners) praying that the respondents and each of them, their agents, attorneys, and servants, and any person or persons claiming under them by virtue of any title or titles derived from said respondents, be enjoined from interfering with the petitioners' use and enjoyment of a certain right of way and railway line, and that it be adjudged and decreed that the petitioners have, and are entitled to have, such right of way over certain property belonging to the respondents situated in the ward of Gurabo Abajo of Juncos in the Island of Puerto

Rico, and described as the Fincas Collazo and Islote.

The respondents answered and in their answer raised, first, the issue of the jurisdiction of the federal court on the ground of lack of diversity of citizenship; second, that the petitioners had no right of way across the land of the respondents for its railroad, which they alleged it had been permitted to cross by the father of the respondents without consideration; and, third, the right of way claimed by the petitioners was not a continuous servitude; that there was no record of any grant of such servitude in the Registry of Property; and that the respondents were third parties or *terceros* within the meaning of the Civil Code and Mortgage Law of Puerto Rico.

The District Court held that the petitioners were entitled to a servitude for their railroad over the properties referred to in the petition as the properties described as the Fincas Collazo and Islote.

The respondents appealed and assigned numerous errors which may be considered under three heads: (1) That the District Court erred in holding that it had jurisdiction to entertain the petition of the appellees; (2) that the District Court erred in ruling that an easement or servitude for a railroad was created across the property Islote by the deeds passing between Juncos Central Company and Manuel Mendez Dueno on May 22, 1917; (3) that the District Court erred in failing to hold that the respondent Zoilo Mendez was a *tercero* with respect to those deeds and was not bound by any grant of servitude, if one was granted, since no grant of such servitude was recorded in the Puerto Rican Registry of Property.

This is an ancillary proceeding to a general creditors' bill to marshal the assets of the United Porto Rican Sugar Company of Puerto Rico brought by the Miller Fertilizer Company against the United Porto Rican Sugar Company.

On December 11, 1933, an order was entered in the Federal District Court upon said creditors' bill, directing the sale, by a special master appointed by the court, of all the properties and assets of the United Porto Rican Sugar Company. A sale was made and confirmed by the District Court on March 26, 1934, and the receiver and special master transferred all the assets of the Sugar Company, including a certain railroad, to trustees under the name of the Eastern Sugar Associates, the petitioners in the present proceedings, which transfer was approved on the same day.

As to the issue of jurisdiction, the petitioners do not now rely on the diversity of citizenship of the parties, but on the fact that the District Court in its decree of sale of the properties of the United Porto Rican Sugar Company made the following reservation:

"Para. XI. 2.—The Court hereby reserves the exclusive power and jurisdiction to transfer and deliver to any purchaser title to and possession of any property and assets hereby directed to be sold and to determine any and all controversies as to the character, extent, nature, priority and validity of the title and possession acquired by such purchaser. * * *"

And also the further reservation in paragraph XIV:

"Matters Reserved. 1.—All matters not heretofore or by this Decree determined are reserved by this Court for future determination. Any party to the above entitled cause, or any claimant or other person whose rights are affected or determined by any of the provisions of this decree, or the purchaser at the sale hereinabove referred to, may at any time apply to this court for further order and direction touching the matter herein reserved for determination by the court."

There seems to be no question that if the decree confirming the sale is not final, the equity court retains jurisdiction over the properties sold for the purpose of enforcing any reversal or modification of the decree confirming the sale, which may be ordered by an appellate court. Where the court has retained jurisdiction in the decree of sale, it is not essential that an officer of the court retain possession of the properties to sustain the ancillary jurisdiction to protect from interference or settle the title to the properties conveyed. Wabash Railroad Company v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; Bronson v. La Crosse & Milwaukee R. Co., 1 Wall. 405, 17 L. Ed. 616; Grant et al. v. Phoenix Life Insurance Company, 121 U.S. 118, 7 S. Ct. 849, 30 L.Ed. 909; Julian v. Central

Trust Company, 193 U.S. 93, 112, 24 S. Ct. 399, 48 L.Ed. 629; 3 C.J. 1268.

Prior to the transfer of the properties, several appeals were taken to this court by creditors of the United Porto Rican Sugar Company from the order of March 26, 1934. On June 1, 1935, while these appeals were pending in this court, the petition in these proceedings was filed in the Federal District Court for Puerto Rico by the petitioners, alleging that they had acquired all the properties of the United Porto Rican Sugar Company, including a railroad serving the sugar factory known as "Central Juncos" and extending west and crossing the properties of the respondents, known as Collazo and Union, as shown on the following sketch:

on which he lived until his death in 1928. There was some disagreement in the testimony of witnesses at the hearing as to whether this finca was locally known as Union or Islote. It is immaterial, we think, and we shall hereinafter refer to it as the farm Islote, or simply as Islote. He also acquired in 1904 a large tract of land of 1,488.05 acres situated just east of Islote, which in 1905 he transferred to the partnership of Roig, Gay & Cia, in which he was a silent partner, which was engaged in the raising and grinding of sugar cane. In 1905 the partnership transferred 488.8 acres of said tract adjoining the property Islote to the Juncos Central Company, on which was located a sugar factory. This tract of 488.8

**Sketch**

Until there is a final termination and sale of properties under such reservations as were made in the order of sale in this case, we think the District Court has jurisdiction over all matters relating to the title of the properties included in the order of sale. The usual rules governing bills to quiet title do not apply here where the res is already in the hands and under the control of the equity court.

We think the District Court properly took jurisdiction over the petition in this case to quiet the title to the property sold.

In 1894 Manuel Mendez Dueno purchased the finca or farm designated on the above sketch as "Union" or "Islote,"

acres is sometimes referred to in the deeds, and was also locally known, as the Hacienda Solitaria.

In 1905–06 and soon after this transfer to the Juncos Central Company and while Manuel Mendez owned the farm Islote, a railroad was constructed across this property and also across the finca Caloca and the finca Collazo on the west, as shown on the sketch, supra, and still further on to the west for several miles, for the purpose of transporting sugar cane to the factory of the Juncos Central Company. The right of way for the railroad over the property designated as Collazo is now conceded under section 477 of the

Civil Code (1930). The only issue is whether a right of way for the railroad was acquired by the Juncos Central Company over the farm Islote.

No question was ever raised as to the right of the Juncos Central Company to maintain and use the railroad across Islote until after Manuel Mendez died in 1928, and the title to Islote came into the possession of his son, Zoilo Mendez Rios, one of the respondents in this case and who had always lived with his father on this property; and it was not until the property known as Central Juncos, which had been acquired by the United Porto Rican Sugar Company, was transferred by the receiver and special master to the petitioners in 1934 that the respondent Zoilo Mendez set up the claim in the early part of 1935 that the railroad ran over Islote by the permission of his father, Manuel Mendez, and that he proposed to revoke the permission or license, and ordered the petitioners to remove the tracks or agree to pay for the use of his land as a right of way for the railroad on or before June 1, 1935.

During the thirty years that the sugar factory had been operated on the property known locally as the Central Juncos or Hacienda Solitaria, the Juncos Central Company and the United Porto Rican Sugar Company had expended large sums of money in improving and enlarging the factory, in acquiring a number of farms lying to the west of the finca designated on the sketch as Caloca, and in extending the railroad several miles farther west.

The relations between the company and Manuel Mendez had always been friendly, and until 1912 no apparent effort was made to acquire a formal right of way for the railroad over Islote and Caloca. A former manager of the Junco Central Company testified that negotations were entered into in 1912–13 relating to the acquiring by the Juncos Central Company of such a right of way and the sum of four or five thousand dollars was paid to Manuel Mendez for such right of way, but no instrument granting such right was executed, or, if so, it has been lost.

In 1917, in order to establish its right of servitude over these parcels, the Juncos Central Company entered into a contract of purchase and sale with Manuel Mendez before a notary, by which it transferred to Manuel Mendez eight parcels of land lying west of the property designated as Collazo, which parcel also was later conveyed to him. This contract contained agreements by Mendez to plant cane for five years on said lands conveyed to him, the Juncos Central Company agreeing to pay him a certain amount of sugar per one hundred pounds of cane ground at its mill. It was further provided that, in consideration of an additional quarter of a pound of sugar per one hundred pounds of cane, Manuel Mendez and, as attorney for his wife, Micaela Rios, established and granted to the Juncos Central Company a perpetual right of way for the railroad line of said corporation over *all* his rural properties.

At this time Manuel Mendez was the owner of the rural properties referred to as Islote and of a one-half interest in common in 38 acres of the property described on the sketch shown above as Caloca, which he had acquired in 1908. In the same instrument it was also provided that Manuel Mendez and, as attorney for his wife, agrees and obligates himself to grant to the Juncos Central Company a right of way over his properties Caloca, San Luis, Rincon, and Emelia, which easement was to be evidenced by another deed.

In compliance therewith on the same day another deed was executed by Manuel Mendez Dueno before the same notary, in which it was stated that Manuel Mendez was the owner of certain properties, eight of which were granted to him by the Juncos Central Company by deed above referred to, and in which were also described three other properties and a twelfth, described as an "undivided ownership in common of one half of 38 acres which are part of a farm of 79 acres more or less, located in the ward of Gurabo Abajo of Juncos," and *bounded on the east by the Hacienda Solitaria.*

It was also stipulated in this deed that Manuel Mendez granted to the Juncos Central Company a perpetual right of way for its railroad over all and every parcel described therein, as well as over his undivided one-half interest in the parcel known as Caloca and consisting of 38 acres.

It is now claimed by the respondents that the word "all" in the deed of "Purchase and Sale" was not inclusive, and they point to the fact that at the same

time Mendez agreed to convey by separate deed a right of way for the railroad over the eight pieces of property that day conveyed to him by the Juncos Central Company, and also over three other parcels, together with his undivided interest in 38 acres of the finca, without naming the finca Islote.

The interpretation of these two deeds is a determining factor in this controversy. The District Court held that the first deed of "purchase and sale" granted a right of way for the railroad over *all* the rural properties then owned by Manuel Mendez, which clearly included the property Islote; and that the second deed purported to acknowledge a servitude over all the properties conveyed to him and also over a certain rural property bounded and described as follows:

"(1).—Rural: Undivided ownership in common of one half of 38 acres which are part of a farm of 79 acres more or less, located in the ward of Gurabo Abajo of Juncos, bounded: on the North, by the Estate of Pablo Ubarri; on the South by the Gurabo River; on the West by the Succession of Juan Nogueras; and on the East with Hacienda Solitaria, today the Juncos Central Company."

While this description of the eastern boundary may have been due to misunderstanding as to the location of these properties by the notary who drew the deeds, since the body of the description itself refers to the undivided half of 38 acres of the finca Caloca, it appears that the facts for drafting the deed were furnished by Manuel Mendez. It was executed by Mendez and accepted by the Juncos Central Company. It discloses an understanding of the parties that the Juncos Central Company was to have a right of way for its railroad, beginning at the western boundary of the Hacienda Solitaria, or the Juncos Central property, and furnished some aid in the construction of the purchase and sale agreement of the same date.

To understand what the parties must have intended by these two deeds, it is necessary to have a brief outline of the situation. At the time these deeds were given the Juncos Central Company owned the sugar factory on the property described on the plan as Juncos Central, or Hacienda Solitaria, and also large tracts of land to the west, including the properties described as Collazo, and maintained a railroad over the same, and over the fincas Caloca and Islote, for the purpose of shipping cane to its factory, in acquiring and developing which it had spent large sums of money. Manuel Mendez owned the farm next adjoining Central Juncos on the west, locally known as Islote, and had a one-half undivided interest in 38 acres of the next finca on the west, indicated on the sketch, supra, as Caloca, over which two farms the railroad, no doubt, was originally established with the consent of Manuel Mendez, or, in the case of Caloca, with the consent of his predecessor in title. Beyond these two parcels to the west the Juncos Central Company owned many parcels of land which were under cultivation for raising sugar cane.

It is clear from the deeds introduced and from the testimony of witnesses that the boundaries of these properties were not clearly understood by those living in the vicinity; but it is inconceivable that the Juncos Central Company could have agreed when it was entering into the purchase and sale instrument above referred to with Manuel Mendez to cut itself off intentionally from maintaining its railroad over the lands to the west by not obtaining a servitude over the property known as Islote. Not only is it absurd that, with all the money it had invested in land and factory, amounting to several million dollars, it would have put itself in such a position, that the right of way which it had acquired to the west of Islote should become unavailable; but it is clear from the record that it was also for the interest of Mendez to have means of transporting his cane to the factory, which he had agreed to plant for five years, the amount he was to receive for it being at the same time agreed upon.

As the court said in Merrill-Ruckgaber Co. v. United States, 241 U.S. 387, at page 392, 36 S.Ct. 662, 664, 60 L.Ed. 1058:

"The case is in narrow compass. It involves for its solution the construction of a contract, and the rules to guide such construction we need not rehearse. To its words we at first resort, but not to one or a few of them, but to all of them as associated, and *as well to the conditions to which they were addressed and intended to provide for.*" (Italics supplied.)

We think the construction of these deeds by the District Court was right in

the light. of the circumstances surrounding the transactions. They were drawn by the attorney for Manuel Mendez and a case of doubt must be construed against him. New York Central R. R. Co. v. Stoneman, 233 Mass. 258, 123 N.E. 679.

Counsel for appellants suggests that to the word "all" in the purchase and sale agreement should be added the words "those just purchased" or words referring to the property conveyed to Manuel Mendez in that deed; but a grantor should not be permitted to add words to a deed drafted by his own counsel that would give to the deed an entirely different effect.

The later grant of a right of way over Caloca in 1923 was undoubtedly the result of Mendez having acquired full title to that property, which consisted of 79 acres. It is also inconceivable that the Juncos Central Company would have paid Mendez $4,000 for a right of way over Caloca, if it had no right of way for its railroad over Islote.

While such a right of way is not a continuous servitude within the meaning of section 465 of the Civil Code (1930), but a discontinuous, though an apparent, servitude, which cannot be acquired by prescription, Central Cambalache v. Martinez (C.C.A.) 82 F.(2d) 37, 41, the Supreme Court of Puerto Rico, however, has held that if a consideration is paid, the owner of the servient estate may be estopped, even by an oral agreement, to deny the existence of such a servitude. Velez et al. v. Guanica Central, 26 Puerto Rico 724. It is clear that Mendez received consideration for the grant of a servitude on all his rural properties in 1917, and while the District Court did not decide this question, we think the grantee of Manuel Mendez was estopped to deny the servitude which the District Court found it was the intention of the parties to grant by the purchase and sale agreement of May 22, 1917, though not recorded in the Registry.; nor is his grantee and heir, Zoilo Mendez, a *tercero* under section 546 of the Civil Code (1930) or article 27 of the Mortgage Law of Puerto Rico (Rev. St. & Codes Puerto Rico 1913, § 6711), or in any better position to deny the existence of the servitude than was his father, who executed these deeds, and who watched the construction of this railroad over his property without objection and availed himself of the benefits therefrom.

The contention, therefore, of the respondent Zoilo Mendez Rios, that he is a *tercero* or third party with reference to the property known as Islote, which he acquired by deed in 1926, subject to his father's life interest, which was terminated by the father's death in 1928, cannot be upheld. A third person is one who has no knowledge of the servitude or encumbrance. Zoilo Mendez can hardly claim to occupy this position. He had lived on the farm known as Islote all his life. The railroad was obviously an apparent servitude. Nothing could be more apparent than its tracks and their continued use from year to year, and while no servitude was recorded in the Registry of Property, the District Court found that Zoilo Mendez had actual notice of the railroad and was bound to investigate the source of the right to maintain it over his property.

While the instrument in which Mendez granted a right of way for the railroad over all his rural properties did not sufficiently describe the several estates to warrant its being received at the Registry, yet it was an apparent easement which put a purchaser on inquiry.

The textwriter, Morell, in commenting on article 27 of the Mortgage Law, cites judgments of the Supreme Court of Spain, holding that the character of a third person under the Mortgage Law cannot be asserted by one who has full knowledge of the conditions under which the acquisition was made, even though they do not appear from the Registry, whether such knowledge was derived from the acts performed by the alleged third person or from facts which must necessarily strike the senses, as in the case of apparent servitudes, such as a railroad.

In Castor Colon v. Plazuela Sugar Company, 47 Puerto Rico 871, the Supreme Court of Puerto Rico said:

"Where actual notice exists, it is not possible to assert the character as a third person. Let us suppose that a person gains personal knowledge of the existence of certain facts from some source of information, could the living reality of those facts be erased from his imagination so as to permit him to successfully claim the status of a third person? Are the rules prescribed by the Mortgage Law determining whether or not a contracting party has the status of a third person, so inflexible as to carry one to the extreme of disre-

406

garding reality in order to create the fiction of a want of knowledge, where the facts, perceived through the senses, palpably manifest themselves with the necessary clearness? Undoubtedly not. As we said in Arroyo v. Zavala, 40 Puerto Rico 257, the law does not live in an atmosphere of fiction but in a world of realities."

Morell, in volume 2 of his work on the Mortgage Law, says of section 23:

"The legal doctrine of the Spanish judgments is 'that one has not the character of a third party who acquired property legally encumbered by a servitude whose existence cannot be doubted by reason of ostensible and indubitable signs, even though such servitude be not recorded in the Registry.' "

We think the findings of fact by the District Court cannot be said to be clearly wrong, and his rulings of law are in accordance with the provisions of the Civil Code, the Mortgage Law, and the decisions of the Supreme Court of Puerto Rico.

The decree of the District Court is affirmed, with costs to the appellees.