318 So.2d 911 (1975)
LAKE, INC.
v.
LOUISIANA POWER & LIGHT CO.
No. 6779.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
Rehearing Denied October 9, 1975.
Writ Granted November 25, 1975.
Lamar M. Richardson, Jr., Ponder & Richardson, Metairie, for Lake, Inc., plaintiff-appellant.
Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart, J. Wayne Anderson, New Orleans, for Louisiana Power & Light Company, defendant-appellee.
Before SAMUEL, LEMMON and BOUTALL, JJ.
*912 BOUTALL, Judge.
This case comes before us from the granting of a summary judgment in favor of defendant and the dismissal of plaintiff's suit.
In 1925 a Mrs. Theriot purchased two lots in Westwego Heights Subdivision. In 1930 defendant constructed a large power line across these two lots without first invoking expropriation powers in the courts. In 1954 Mrs. Theriot complained to Louisiana Power & Light about the power lines, asking that she receive damages for the presence of the lines. Louisiana Power & Light did not respond and Mrs. Theriot did not pursue the matter any further. In 1961 Lake, Inc. bought the two lots at a tax sale. In 1972 Lake, Inc. instituted this suit for removal of the power lines or alternatively compensation for their presence.
The trial judge granted judgment for Louisiana Power & Light on the basis of the applicability of the St. Julien doctrine and we affirm.
The St. Julien doctrine, first announced in the case of St. Julien v. Morgan's La. & Tex. Ry. Co., 35 L.Ann 924 (1883), states that a public or quasi-public corporation, with the power of expropriation, may acquire a servitude over the land of another without expropriation proceedings if the landowner had knowledge of the construction and consented to it or acquiesced in it. The doctrine allows the structures to remain on the property, but grants the landowner a right to damages for their presence.
The facts show that these power lines had been on Mrs. Theriot's property for 24 years before she raised any complaint. This failure to complain constitutes acquiescence in the structures' presence. St. Julien v. Morgan's La. & Tex. Ry. Co., supra; Veillon v. Columbia Gulf Transmission Co., 192 So.2d 646 (La.App. 3rd Cir. 1966). Mrs. Theriot's complaint in 1954 was ineffectual since the St. Julien case makes it very clear that the landowner must do more than merely complain. In St. Julien, at pages 925 and 926, the court stated:
"It is unnecessary for us to say or intimate how or whether he would have been protected had he done more than talk to a lawyer. Certain it is he did not invoke the arm of the law at the time when it could have been of service to him, but on the contrary acquiesced in the defendant's taking possession and using his property, encouraged it to prosecute its work by abstaining from any attempt to prevent it, and made no complaint in a court of law of the injuries inflicted upon him until the defendant had expended large sums of money in completing its line. Having thus permitted the use and occupancy of his land and the construction of a quasi public work thereon without resistance or even complaint, he cannot afterwards require its demolition, nor pre*vent its use, nor treat the Company erecting it as his tenant." (*926).
Since the St. Julien case in 1883 a long line of jurisprudence has upheld this equitable doctrine of unopposed use and occupancy. Mitchell v. N. O. & N. E. Ry. Co., 41 La.Ann. 363, 6 So. 522 (1889); Gumbel v. N. O. Terminal Co., 186 La. 882, 173 So. 518 (1937); Veillon v. Columbia Gulf Transmission Co., supra; Harrison v. Louisiana Power & Light Company, 274 So.2d 785 (La.App. 4th Cir. 1973) reversed on other grounds, 288 So.2d 37 (1973). We believe this doctrine, although a very old one, still has vitality and is still needed even in our complex and changing society. The theory behind this doctrine is that were we to force the removal of these power lines we would be harming the public unnecessarily. The people of that area have depended upon and used the power from these lines for 45 years. By failing to invoke the St. Julien doctrine we would cause an interruption in that area's electrical *913 service or relocation of the power lines at great expense to the consuming public. Justice warrants neither of these results.
The next issue before us is whether Lake, Inc. is entitled to damages for the presence of the power lines on their property. We are mindful of the fact that St. Julien and the cases that followed it have always allowed compensation to the landowner after judicially creating a servitude on his property. Our review of the jurisprudence discloses that this right to compensation is not absolute and may be lost. The facts in this case clearly show that Lake, Inc. has lost its right to compensation.
It is not disputed by the litigants that this right to compensation is a personal right and not a property right. As such the right does not attach to the land, but remains with the landowner when the property is sold. McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42 (1907); Gumbel v. N. O. Terminal Co., 197 La. 439, 1 So.2d 686 (1941); Veillon v. Columbia Gulf Transmission Co., supra. Mrs. Theriot first had this right and did not transfer it to Lake, Inc. at the tax sale or at any other time, therefore, Lake, Inc. cannot assert a right it does not have. Even assuming that Lake, Inc. still possessed this right it has lost it through prescription. RCC article 3544 states that personal rights prescribe in 10 years and Lake, Inc. owned the property for 11 years before commencing this action. See McCutchen v. Texas & P. Ry. Co., supra.
For the foregoing reasons the judgment of the lower court is affirmed. Appellant to pay all costs.
Affirmed.
LEMMON, J., concurs and will assign reasons.
LEMMON, Judge (concurring).
Supreme Court decisions, which (although recently questioned) have not been overruled, support the majority opinion.
While acknowledging the authority of these decisions, I express my personal view that a predial servitude cannot be acquired by an indefinite period of acquiescence.[1] The Civil Code, however, does provide specifically that continuous apparent servitudes may be acquired by possession for ten or thirty years. C.C. art. 765, 3504. Continuity has often been confused with apparentness. C.C. art. 727 defines continuous servitudes as those whose use is or may be continual without the act of man. The Code classifies an aquaduct as continuous, although such a servitude is only used intermittently, because it may be used uninterruptedly without man's intervention. On the other hand, the Code classifies the right of passage as a discontinuous servitude. C.C. art. 727. This classification has been held applicable even when the usage of that right is evidenced by a concrete driveway or by a railroad. Kelly v. Pippitone, 12 La.App. 635, 126 So. 79 (La.App.Orl.1930); Ogborn v. Lower Terrebonne Ref. & Mfg. Co., 129 La. 379, 56 So. 323 (1911); but perhaps contra, see Nash v. Whitten, 312 So.2d 679 (La.App. 2nd Cir. 1975). See also XII Tul.L.Rev. 227 (1938).
The redactors of the Civil Code distinguished between continuous and discontinuous servitudes for purposes of acquisitive prescription, apparently contemplating that discontinuous servitudes were related to isolated acts (such as the occasional passage over the servient estate or the drawing *914 of water upon the estate) which were such a temporary and minor inconvenience that the owner would reasonably be deemed to tolerate the acts. Accordingly, the redactors did not consider the isolated acts done in exercise of discontinuous servitudes as encroachments sufficient to provide a basis for acquisitive prescription. 1 Plainol, Traite Elementaire de Droit Civil, § 2949 (La.St.L.Inst.Trans.1959); Bandry-Lacantinerie & Tissier, Traite The orique et Pratique de Droit Civil, § 283 (La.St.L.Inst. Trans. 1972).
Nevertheless, the redactors of the Code did provide that a person may acquire ownership of part of the immovable property comprising the servient estate by continuous public possession for thirty years. C.C. art. 3475, 3499. Since the acquisition of ownership is based on continuous possession, a difficulty arises because the word "continuous" apparently has a different meaning in C.C. art. 3500 relative to acquisite prescription then in C.C. art. 727 relative to classification of servitudes. Thus, a person theoretically can acquire the right of ownership of a part of the property forming a servient estate by exercising continuous, uninterrupted, public, unequivocal possession as owner (such as by building and operating a railroad or an electric transmission line), but can never by the same acts acquire the lesser right of servitude.
The better approach would be to classify a servitude as continuous when the right exercised upon the servient estate is evidenced by permanent and conspicuous structures, such as a concrete driveway, a railroad, or an electric transmission line. Although technically such structures may not be used uninterruptedly without the act of man, the structures give a characteristic of continuity to the use of the servitude, and since the presence of such structures would be sufficient encroachment to provide a basis for acquiring ownership by possession, their presence should be sufficient to provide a basis for acquiring a servitude by possession.
In the present case defendant's possession prevented the owner from freely using the possessed portion of the servient estate for over thirty years. This type of public and uninterrupted possession entitled defendant to claim ownership of that portion of the estate (which alone is sufficient basis to affirm the judgment in defendant's favor). In my opinion defendant should be likewise entitled to claim a servitude over the same portion based on the same possession.
NOTES
[1] The "St. Julien doctrine" is not actually another method of acquiring servitudes, but was established to prohibit untimely suits for removal of public works known to the landowner. In effect the doctrine converts such a suit by the plaintiff (landowner) into an expropriation proceedings by the defendant (public or quasi-public body), allowing the landowner all rights except removal and trespass damages.